NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

SHEILA K. PLANGE,

          Plaintiff,

          v.

CHRIST HOSPITAL, et al.,

          Defendants.

Civil Case No. 13-6852 (FSH)

**OPINION & ORDER**

Date: May 5, 2014

## HOCHBERG, District Judge:

This matter comes before the Court upon Defendant Mark Prowe's and Defendant Hudson Hospital Opco, LLC's ("HHO's") motions to dismiss (Dkt. Nos. 15 & 16) pursuant to Federal Rule of Civil Procedure 12(b)(6).  Defendant Stephanie Simon joined in Prowe's motion to dismiss by way of letter dated March 28, 2014.  (Dkt. No. 18.)  The Court also considers HHO's motion to stay.  (Dkt. No. 25.)  The Court has reviewed the submissions of the parties and considers the motion pursuant to Federal Rule of Civil Procedure 78.

## I.    BACKGROUND[1]

On November 12, 2013, Plaintiff Sheila K. Plange filed her complaint against Christ Hospital,[2] HHO,[3] Prowe, and Simon alleging violations of Section 102 of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2615 ("FMLA") and the New Jersey Family Leave Act,

---

[1] These facts are taken from Plaintiff's complaint (Dkt. No. 1), unless otherwise noted.

[2] On March 28, 2014, Plange voluntarily dismissed her claims against Christ Hospital.

[3] HHO purchased certain assets—including the hospital where Plaintiff worked—from the now defunct Christ Hospital during its Chapter 11 bankruptcy.  This sale was approved by the Bankruptcy Court for the District of New Jersey.

N.J.S.A. § 34:11b-3 ("NJFLA").  While Plaintiff was working at Christ Hospital, Prowe was the Director of Psychiatry at Christ Hospital, and Simon was the Assistant Director of Psychiatry. Plaintiff started working at Christ Hospital in April 2000 as a secretary.  By 2010, Plaintiff was employed as an office coordinator.

Plaintiff took a vacation from October 17, 2011 to November 24, 2011.  When she returned from vacation, she found five messages waiting for her—three from a Florida lawyer and two from a social worker.  These messages informed Plaintiff that her nephew, Edward Tagoe (currently incarcerated) wanted her to be the kinship parent for his new born son, who had been placed in foster care.  Subsequently, Plaintiff began the steps to become the child's kinship guardian.

On May 23, 2012, Plaintiff informed human resources that she planned to take time off under the FMLA in light of becoming the child's kinship guardian.  Plaintiff also asked human resources not to alert Simon—her immediate supervisor—because she feared Simon would retaliate against her and harass her for taking time from work.  Human resources assured Plaintiff that she would not be retaliated against.

On June 18, 2012, Plaintiff emailed a copy of a letter confirming that she was the child's kinship guardian to Prowe, Simon, and human resources.  According to the complaint, within five minutes of sending the email, Simon entered Plaintiff's office, stated she didn't know anything about the request, and stormed out.  Plaintiff then called Prowe, who allegedly stated that Plaintiff just took vacation and was now asking for more time off.  Plaintiff alleges that she told Prowe she was seeking time off under the FMLA, not vacation time.

Plaintiff met with Prowe and Simon the next day.  According to the complaint, Prowe and Simon advised Plaintiff to give the baby away to a married couple who needed a baby.  They

2

also asked her several questions about how much time she planned to take off and how she would care for the baby with a job.  Prowe allegedly acknowledged that Plaintiff was protected under both federal and state law while in the meeting.

On June 22, Plaintiff took the family leave application to Prowe for him to sign.  They calculated the time Plaintiff would be on leave to be from July 20, 2012 to August 31, 2012.  Plaintiff then took some vacation and personal time off on July 5, 6, and 9, 2012 to work on, *inter alia*, finalizing the adoption.  Plaintiff was terminated when she returned to work on July 10, 2012.

Prowe and Simon indicated that Plaintiff was terminated because she did not speak Spanish and did not have the correct certification to be an office coordinator.  Plaintiff contends that these reasons were merely a pretext for discrimination because Plaintiff took leave under the FMLA.  Defendants knew of Plaintiff's certifications (or lack thereof) when they hired her for the job and said nothing for the three years she held the position of office coordinator.  This suit followed.

## II.   STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) ("[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required element.  This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.") (internal quotations omitted).

When considering a motion to dismiss under *Iqbal*, the Court must conduct a two-part analysis.  "First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations and quotations omitted).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Iqbal*, 129 S. Ct. at 1949 (internal quotations and alterations omitted).

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings.  However, an exception to the general rule is that a 'document *integral to or explicitly* relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'"  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal citations omitted) (emphasis in original).

## III.   DISCUSSION

Defendants move to dismiss this action on two main grounds.  First, the Defendants argue that the FMLA and NJFLA do not provide benefits for kinship guardians.  Second, HHO argues that Christ Hospital's bankruptcy, and HHO's subsequent purchase of the hospital under certain terms and conditions, prevents Plaintiff's FMLA and NJFLA causes of action.  HHO also requests that the Court stay this action so that the Bankruptcy Court can rule on HHO's motion

to enforce the sale agreement, which currently pending in that court.  The Court addresses these arguments in turn.

### a.  Kinship Guardian Status in the FMLA and NJFLA

Prowe and Simon move to dismiss Plaintiff's FMLA and NJFLA claims for a single reason, to wit, that kinship guardians are not entitled to leave benefits under those acts.

"To prevail on a retaliation claim under the FMLA, the plaintiff must prove that (1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights."  *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301-02 (3d Cir. 2012).  In order to assert a claim of interference, "the employee only needs to show that he was entitled to benefits under the FMLA and that he was denied them."  *Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005).  Therefore, to maintain an action under the FLMLA, a plaintiff must show, *inter alia*, that she is entitled to FMLA leave.  *See, e.g.*, *Parker v. Hanhemann Univ. Hosp.*, 234 F. Supp. 2d 478, 483 (D.N.J. 2002).  Similarly, the NJFLA prohibits employers from interfering with an employee's rights under the act and prohibits discharging or discriminating against an employee for opposing a practice that is unlawful under the NJFLA.  *See* N.J.S.A. § 34:11B-9.  The question presented to the Court is whether a kinship guardian is a covered relationship within the meaning of the NJFLA and FMLA.

Under the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following: . . . (B) Because of the placement of a son or daughter with the employee for adoption or foster care. . . ."  29 U.S.C. § 2612.  The FMLA defines "son or daughter" as "a biological, adopted, or foster child, a stepchild, ***a legal ward***, or ***a child of a person standing in loco parentis***, who is -- (A) under 18

years of age; or (B) 18 years of age or older and incapable of self-care because of a mental or physical disability."  29 U.S.C. § 2611 (emphasis added).  The FMLA was initially passed in 1993.

Under the NJFLA, "[a]n employee of an employer in this State subject to the provisions of this act shall be entitled to a family leave[4] of 12 weeks in any 24-month period upon advance notice to the employer, unless the employer denies family leave to the employee pursuant to subsection h."  N.J.S.A. § 34:11B-4.  "Leave taken because of the birth or placement for adoption of a child may commence at any time within a year after the date of the birth or placement for adoption."  *Id*.  The NJFLA defines "child" as "a biological, adopted, or resource family child, stepchild, ***legal ward***, or child of a parent who is (1) under 18 years of age; or (2) 18 years of age or older but incapable of self-care because of a mental or physical impairment." N.J.S.A. § 34:11B-3 (emphasis added).  The NJFLA was initially passed in 1989.

In 2002, the New Jersey Legislature passed legislation creating a new legal guardianship status known as "kinship legal guardianship."  *See* N.J.S.A. § 3B:12A-1.  Its purpose was to create an alternative arrangement whereby relatives who provide long-term care for children are transferred certain parental rights, and birth parents retain the right to consent to adoption, retain the obligation to pay child support, and have the right to some ongoing contact with the child. *Id*.  The act also describes the role of a kinship guardian:

> (1) Except as provided in paragraph (2) of this subsection, ***a kinship legal guardian shall have the same rights, responsibilities and authority relating to the child as a birth parent***, including, but not limited to: making decisions concerning the child's care and well-being; consenting to routine and emergency medical and mental health needs; arranging and consenting to educational plans for the child; applying for financial assistance and social services

---

[4] "Family leave" includes "the placement of a child with the employee in connection with adoption of such child by the employee."  N.J.S.A. § 34:11B-3.

> for which the child is eligible; applying for a motor vehicle operator's license; applying for admission to college; responsibility for activities necessary to ensure the child's safety, permanency and well-being; and ensuring the maintenance and protection of the child.

N.J.S.A. § 3B:12A-4(a) (emphasis added).  The exceptions referenced in the statute are that a kinship guardian may not consent to the adoption of the child or legally change the child's name. *Id*.

It is clear that both the FMLA and NJFLA have expansive definitions of who qualifies as a child within the meaning of those acts.  For example, both the FMLA and the NJFLA describe a child as including a "legal ward."  After reviewing the description of kinship guardians found in the New Jersey statute, there is no doubt that a child becomes the legal ward of a kinship guardian.  Indeed, kinship guardians have rights and responsibilities that are almost identical to birth parents.  At the very least, Plaintiff has alleged that she stood *in loco parentis* when she became the kinship guardian for her nephew's baby.[5]  Therefore, both the FMLA and the NJFLA may be invoked by a kinship guardian after a child is placed in under their care.  *See*, *e.g.*, *Martin v. Brevard Cnty. Pub. Sch.*, 543 F.3d 1261, 1265-66 (11th Cir. 2008) (finding that a grandparent could invoke the FMLA under the *in loco parentis* provision).

Defendants argue that the FMLA and the NJFLA do not specifically mention kinship guardians and, therefore, do not extend to that legal relationship.  This argument fails for at least two reasons.  First, both the FMLA and NJFLA define who qualifies as a child expansively, and include "legal wards" within those definitions.  It is clear that, based on the rights and responsibilities of a kinship guardian, the child of a kinship guardian is their legal ward.  Second,

---

[5] The Department of Labor defines persons who are "*in loco parentis*" as "those with day-to-day responsibilities to care for and financially support a child, or, in the case of an employee, who had such responsibility for the employee when the employee was a child.  A biological or legal relationship is not necessary." 29 C.F.R. § 825.122.

New Jersey did not pass the kinship guardian statute until long after the FMLA and NJFLA were passed.  It is not surprising—nor is it dispositive—that Congress and the New Jersey legislature did not include the words "kinship guardian" in either act.  Therefore, being a kinship guardian is no bar to invoking the protections of the FMLA or NJFLA if the individual is otherwise qualified under those acts.

Because the Court finds that kinship guardians are covered under the FMLA and NJFLA, it need not address Plaintiff's arguments with respect to promissory estoppel under the FMLA.

### b.  Christ Hospital's Bankruptcy & HHO's Motion to Stay[6]

HHO also filed a motion to dismiss and a motion to stay based on Christ Hospital's bankruptcy proceedings.  HHO argues that it purchased the hospital where Plaintiff works free and clear of all obligations after the original owner, Christ Hospital, declared bankruptcy.  A short history of the bankruptcy follows.

Christ Hospital filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of New Jersey on February 6, 2012.  Following an auction for Christ Hospital's assets, the Bankruptcy Court entered an order allegedly authorizing the sale of the hospital's assets free and clear of liens, claims, interests, and encumbrances.  The sale of the hospital to HHO closed on July 13, 2012.  On June 4, 2013, the Bankruptcy Court entered an order confirming Christ Hospital's Joint Plan of Orderly Liquidation.  Accordingly, all of the events described in Plaintiff's complaint occurred prior to the hospital's official transfer from Christ Hospital to HHO.  On April 9, 2014, HHO filed a motion in the Bankruptcy Court seeking to enjoin Plaintiff from pursuing her FMLA and NJFLA claims based on the Bankruptcy Court's prior sale order.

---

[6] The facts related to Christ Hospital's bankruptcy proceedings are taken from the Walker Certification and its attached exhibits.

HHO argues that in light of these facts, and the Bankruptcy Court's ongoing jurisdiction over matters arising from its orders, the Court should stay this matter with respect to HHO pending the Bankruptcy Court's resolution of HHO's motion.  This Court agrees.

First, the enforcement of a bankruptcy sale order is a core proceeding whereby the Bankruptcy Court may enter a final judgment.  *See In re Allegheny Health Educ. & Research Found.*, 383 F.3d 169, 176 (3d Cir. 2004) ("[W]e hold that the bankruptcy court correctly determined that the suit was a core proceeding because it required the court to interpret and give effect to its previous sale orders.").  HHO has moved the Bankruptcy Court to enforce its order, and this Court is convinced that the Bankruptcy Court should interpret its own order in the first instance.  Moreover, HHO's motion to dismiss substantially overlaps with its request in the Bankruptcy Court.  In light of these considerations, the Court will exercise its discretion and stay this matter with respect to HHO pending the Bankruptcy Court's resolution of HHO's motion to enforce the Bankruptcy Court's prior sale order.[7]  *See Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."); *see also Bechtel Corp. v. Local 215, Laborers' Int'l Union of N. Am., AFL-CIO*, 544 F.2d 1207, 1215 (3d Cir. 1976) ("In the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues.").

_____

[7] This matter touches upon the principles underlying the "first-filed" rule.  "The first-filed rule encourages sound judicial administration and promotes comity among federal courts of equal rank.  It gives a court 'the power' to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court."  *E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988) *aff'd*, 493 U.S. 182 (1990).  Here, the Bankruptcy Court obtained jurisdiction over the hospital and its subsequent sale of assets over a year before the Plaintiff filed the current action.  In light of possible conflicting rulings, the substantial overlap in issues, conservation of judicial resources, and the Bankruptcy Court's comparative advantage in interpreting its own orders, the Court determines that a stay is appropriate in this case.

Because the Court is staying this matter with respect to HHO to allow the Bankruptcy Court to rule on HHO's motion in that court, it will administratively terminate HHO's overlapping motion to dismiss.[8]

## IV.    CONCLUSION & ORDER

For the reasons stated above,

**IT IS** on this 5th day of May, 2014,

**ORDERED** that Prowe's and Simon's motions to dismiss (Dkt. Nos. 15 & 18) are **DENIED**; and it is further

**ORDERED** that HHO's motion to stay (Dkt. No. 25) is **GRANTED** with respect to HHO; and it is further

**ORDERED** that HHO's motion to dismiss (Dkt. No. 16) is **ADMINISTRATIVELY TERMINATED WITHOUT PREJUDICE**; and it is further

**ORDERED** that this matter is **STAYED** with respect to HHO until HHO's motion to enforce is resolved by the Bankruptcy Court; and it is further

**ORDERED** that this matter will proceed with respect to Prowe and Simon; and it is further

**ORDERED** that the parties will file a joint status letter to the Court within **14 days** after the Bankruptcy Court resolves HHO's motion.

**IT IS SO ORDERED.**

   **/s/ Hon. Faith S. Hochberg**
Hon. Faith S. Hochberg, U.S.D.J.

_____

[8] The Bankruptcy Court's ruling on HHO's motion to enforce the sale order should resolve the vast majority of the issues raised by HHO's motion to dismiss.  Because Prowe and Simon may be individually liable under the FMLA, this matter will not be stayed with respect to them. *Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 667 F.3d 408, 414 (3d Cir. 2012); *see also Thompson v. Real Estate Mortgage Network*, 12-3828, 2014 WL 1317137, at *8 (3d Cir. Apr. 3, 2014).